John Meyer, MT Bar # 11206
Andrew Gorder, MT Bar # 11988
Cottonwood Environmental Law Center
24 S. Willson Avenue, Suites 6-7
Bozeman, MT 59715
(406) 587-5800 | Phone
(406) 587-5801 | Fax
John@cottonwoodlaw.org
Andrew@cottonwoodlaw.org

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| NOLAN SALIX; COTTONWOOD ENVIRONMENTAL LAW CENTER, Plaintiffs, vs. UNITED STATES FOREST SERVICE; VICTORIA CHRISTIANSEN, in her official capacity as Regional Forester for the U.S. Forest Service, Region One, Defendants. | Cause No. COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## INTRODUCTION

1. This case is about the Federal Government's failure to determine whether its programmatic management direction will adversely modify millions of acres of designated critical habitat for the threatened Canada lynx across several national forests in Montana.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 16 U.S.C. § 1540(g) (Endangered Species Act citizen-suit provision), and 28 U.S.C. § 361 (mandamus). Defendants' sovereign immunity is waived by 16 U.S.C. § 1540(g).

3. Plaintiffs have provided 60 days written notice of the violations alleged herein pursuant to 16 U.S.C. § 1540(g).

4. Venue lies in this judicial district pursuant to 16 U.S.C. §1540(g)(3)(A) and 28 U.S.C. § 1391(e) because a substantial part of the ESA violations alleged herein occurred in this district.

## PARTIES

5. Plaintiff Nolan Salix is a resident of Dillon, Montana and is a member of Cottonwood Environmental Law Center. Nolan Salix enjoys the National Forests and uses areas designated as lynx critical habitat for recreation and wildlife viewing. Nolan Salix enjoys going into areas

designated as critical habitat in the Gallatin National Forest and other national forests to look for the threatened Canada lynx. He uses these areas on a frequent and ongoing basis and has concrete plans to return to these areas during the fall of 2012.

6. Plaintiff Cottonwood Environmental Law Center ("CELC") is a non-profit law firm and conservation organization dedicated to the protection of forests, water, and wildlife in the West. Members and staff of the plaintiff organization live and/or recreate throughout the current and historic range of the lynx, including the Gallatin, Lolo, Flathead, Helena and Kootenai National Forests of Montana. Plaintiffs use and enjoy, on a continuing and ongoing basis, the critical habitat of the lynx and the larger ecosystems upon which the lynx depends. CELC's members and staff derive aesthetic, recreational, inspirational, educational, and other benefits from the lynx's existence in the wild on a regular and continuing basis and intend to do so frequently in the future. CELC's members and staff have participated in efforts to protect and preserve the critical habitat essential to the continued survival of the lynx.

7. The above-described aesthetic, recreational, inspirational, educational, and other interests of the plaintiffs have been, are being, and, unless the relief prayed for is granted, will continue to be adversely and

irreparably injured by defendants' failure to re-initiate consultation under the Endangered Species Act ("ESA"). These are actual, concrete injuries to plaintiffs, caused by defendants' failure to comply with the ESA and its implementing regulations and policies. These injuries would be redressed by the relief requested in this complaint. Plaintiffs have no other adequate remedy at law.

8. Defendant U.S. Forest Service ("Forest Service") is an agency of the federal government and is thus charged with re-initiating consultation under section 7 of the Endangered Species Act and related regulations.

9. Defendant Victoria Christiansen is the acting Regional Forester for Region One of the Forest Service. The Regional Forester is a federal official vested with responsibility for properly managing the National Forest system and is responsible for the federal actions discussed herein. Defendant Christiansen is sued in her official capacity.

## THE CANADA LYNX

10. The Canada lynx is a specialist. Like its relative, the bobcat, the lynx is a compact predator with tufted ears and a black-tipped tail. *See* Determination of Threatened Status for the Contiguous U.S. Distinct Population Segment of the Canada Lynx and Related Rule, 65 Fed. Reg.

3

16,052 (Mar. 24, 2000) ("Listing Rule"). Though these similarities have proven enough to confuse state wildlife officials, whose trapping records long maintained a single column for "lynxcats" (*see id.* at 16,054), the differences between the bobcat and the lynx have not been lost on the snowshoe hare. With "twice the surface area as those of the bobcat," the lynx's "large, well-furred paws" allow it to traverse thick blankets of snow. *Id.* at 16,052. The cat's long legs compound this advantage. *Id.* All told, while "[b]obcats are largely restricted to habitats where deep snows do not accumulate," the lynx is "highly adapted for hunting" on snow-covered lands. *Id.* at 16,052. As another animal that "evolved to survive in areas that receive deep snow," the snowshoe hare has been left in search of cover. *See id.* at 16,053.

    11. For all its evolutionary advantages, the Canada lynx has itself come to need protection. On March 24, 2000, the U.S. Fish and Wildlife Service ("Service" or "FWS") added the lynx of the contiguous United States to the list of threatened species. Listing Rule, 65 Fed. Reg. at 16,052. Following nearly a decade of analysis, the agency determined that the lower-48 lynx population—a "distinct population segment," or "DPS," under the ESA—is threatened by "the inadequacy of existing regulatory mechanisms, specifically the lack of guidance for conservation of lynx in National Forest

Land and Resource Plans and [Bureau of Land Management] Land Use Plans." *Id.* at 16,061, 16,082. "[I]t is imperative," the Service concluded, "that lynx habitat and habitat for lynx prey be maintained and conserved on Federal lands." *Id.* at 16,079. "Until Plans adequately address risks such as those identified in the [federal Lynx Conservation Assessment and Strategy]"—including timber harvest and fire suppression activities—"the lack of Plan guidance for conservation of lynx … is a significant threat to the contiguous U.S. DPS of lynx." *Id.* at 16,082.

      12.   Despite its statutory obligation to designate critical habitat at the time of listing*, see Forest Guardians v. Babbitt*, 174 F.3d 1178, 1181-82, 1185-86, 1193 (10th Cir. 1999) (discussing 16 U.S.C. § 1533(b)(6)(C)), the Service delayed in providing habitat protections to the lynx. *See* Designation of Critical Habitat for the Contiguous United States Distinct Population Segment of the Canada Lynx, 71 Fed. Reg. 66,008-09 (Nov. 9, 2006) ("MacDonald Designation"). Clinging to an unlawful regulation that had drained the ESA's critical habitat provisions of their force, *see N.M. Cattle Growers Ass'n v. FWS*, 248 F.3d 1277, 1283-85 (10th Cir. 2001) (discussing the Service's regulation and related policy position); Final Listing Priority Guidance for Fiscal Year 2000, 64 Fed. Reg. 57,114, 57,117-18 (Oct. 22, 1999) (cited in Listing Rule, 65 Fed. Reg. at 16,083), the

5

agency declined to designate critical habitat for the lynx until required to do so by court order. *See* MacDonald Designation, 71 Fed. Reg. at 66,009; *see also Defenders of Wildlife v. Norton*, 239 F. Supp. 2d 9, 26 (D.D.C. 2002) (ordering "prompt rulemaking in order to designate Lynx critical habitat"), vacated in part as moot, 89 Fed. Appx. 273 (D.C. Cir. 2004).  Even then, however, the Service balked.

13. On November 9, 2006, the agency published a regulation identifying lynx critical habitat in only three areas—"Voyageurs National Park in Minnesota, portions of Glacier National Park in Montana, and portions of North Cascades National Park in Washington." MacDonald Designation, 71 Fed. Reg. at 66,030, 66,055-61. The remainder of the species' habitat, which spans large portions of the lower-48's northern tier, was excluded from the designation. *Id.* at 66,010-11. The agency declared that no Forest Service or Bureau of Land Management lands were included in the designation because either their management plans had been revised to incorporate lynx-specific management measures or, in the case of certain Forest Service lands, "the[y] [we]re operating under a Conservation Agreement … in which the [Forest Service had] agreed to use the [Lynx Conservation Assessment and Strategy] to guide section 7 effects determinations for lynx." *Id.* at 66,010.

14. Section 7 of the ESA requires each federal agency to ensure that any action authorized, funded, or carried out by that agency "is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification" of designated critical habitat. 16 U.S.C. § 1536(a)(2).

15. On November 23, 2005, the Forest Service requested to enter into formal section 7 consultation with the U.S. Fish and Wildlife Service regarding the effects of the Northern Rocky Mountain Lynx Amendment ("NRLA") on the Distinct Population Segment of Canada Lynx. The NRLA is a "programmatic plan amendment[]" to the Land and Resource Management Plans on 18 National Forests in the Northern Rocky Mountains analysis area. Biological Opinion ("Bi-Op") at 4; 74 Fed. Reg. 8616, 8625.

16. The NRLA affects the following programs: vegetation management, including pre-commercial thinning, timber harvest, fuels management, and salvage harvest, and forest roads; livestock grazing; minerals; developed recreation; non-winter dispersed recreation; habitat connectivity; and winter recreation. Bi-Op at 5.

17. On March 19, 2007, the U.S. Fish and Wildlife Service issued a Biological Opinion on the effects of the NRLA. The Fish and Wildlife Service concurred with the Forest Service's determination that

amending the Land and Resource Management Plans of 18 National Forests would not jeopardize the continued existence of the Canada lynx. Bi-Op at 2.

18.     At the time the Biological Opinion was issued there was no lynx critical habitat designated on the National Forests. Bi-Op at 75 ("No critical habitat has been designated for this species on Federal lands within the NRLA area, therefore none will be affected.").

19.     Ultimately, the Service's three-park critical habitat designation for the Canada lynx was unable to survive the agency's own scrutiny. On July 20, 2007, U.S. Fish and Wildlife Service Director H. Dale Hall announced that the lynx designation was one of eight agency actions requiring reconsideration due to the improper administrative interference of Julie MacDonald, former Deputy Assistant Secretary of the Interior. Revised Designation of Critical Habitat for the Contiguous United States Distinct Population Segment of the Canada Lynx, 74 Fed. Reg. 8,616-18, 8,623 (Feb. 25, 2009) ("Final Designation").  MacDonald's brief tenure as a political appointee within the Interior Department had been marked by "extensive interference" in the Service's scientific analyses, "over-reaching," and "'illogical' policy choices"—actions that arbitrarily and unlawfully deprived numerous imperiled species of the ESA's protections.

See *Alliance for the Wild Rockies, Inc. v. Allen*, Civ. No. 04-1813, 2009 WL 2015407, at *2-3 (D. Or. July 1, 2009) (granting the government's motion for voluntary remand of a Service regulation that "'exclud[ed] large amounts of areas from the bull trout [critical habitat designation]'" due to "MacDonald's extensive interference in the process and over-reaching and 'illogical' policy choices"); *see also, e.g., W. Watersheds Project v. FWS*, 535 F. Supp. 2d 1173, 1187-89 (D. Id. 2007) (remanding the Service's refusal to list the greater sage-grouse where "MacDonald had extensive involvement in the sage-grouse listing decision, used her intimidation tactics in th[e] case, and altered the 'best science' to fit a not-warranted decision"); *Ctr. for Biological Diversity v. FWS*, No. C04-04324, 2005 WL 2000928, at *4-5, *15-16 (N.D. Cal. Aug. 19, 2005) (vacating a regulation that down-listed two tiger salamander populations where "[t]he scientific review team [had] decided against down-listing" but "were overruled and directed to eliminate the DPS and down-list the species" by MacDonald and another official). MacDonald's substantial involvement in the Service's three-park lynx designation raised "questions … about the integrity of scientific information used and whether the decision made was consistent with the appropriate legal standards." Final Designation, 74 Fed. Reg. at 8,617.

20. After reviewing its November 9, 2006 regulation, the Service

9

concluded that "the critical habitat designation [had been] improperly influenced by then deputy assistant secretary of the Interior Julie MacDonald." *Id.* at 8,618.  In particular, the agency acknowledged, "two significant elements of the critical habitat designation … were influenced by Ms. MacDonald"— "the exclusion of U.S. Forest Service … lands and exclusions of State and private lands."  (Stansell Declaration, *Defenders of Wildlife v. Kempthorne* (D.D.C. Civ. No. 00- 2996)).  Because the Service's own record "d[id] not adequately support these exclusions," (Stansell Declaration, *Defenders of Wildlife v. Kempthorne* (D.D.C. Civ. No. 00-2996)), the agency "determined that it was necessary to revise the critical habitat designation" for the lynx. Final Designation, 74 Fed. Reg. at 8,623.

21.   After public comment and preparing an environmental assessment, the Service concluded that additional lands in Idaho, Montana, Wyoming—lands already occupied by the lynx—should have been included within the species' critical habitat.  *See* Final Designation, 74 Fed. Reg. at 8,618, 8,623, 8,642-44. On February 25, 2009—nearly a decade after the lower-48 lynx population was listed to ensure that "lynx habitat and habitat for lynx prey [would] be maintained and conserved," *see* Listing Rule, 65 Fed. Reg. at 16,079—the agency published a final regulation extending critical habitat protections to these essential areas. *See* Final Designation, 74

10

Fed. Reg. at 8,616.

    22.   Critical habitat is defined in section 3 of the ESA as:

(i)   the specific areas within the geographical area occupied by a species, at the time it is listed in accordance with the Act, on which are found those physical or biological features

    (a)   Essential to the conservation of the species and

    (b)   That may require special management considerations or protection; and

(ii)   Specific areas outside the geographical area occupied by a species at the time it is listed, upon a determination that such areas are essential for the conservation of the species.

16 U.S.C. § 1532(5)(A) .

    23.   "Regulations at 50 C.F.R. § 402.16 require Federal agencies to re-initiate consultation on previously reviewed actions in instances where [the Service has] listed a new species or subsequently designated critical habitat that may be affected[.]" 74. Fed. Reg. at 8644.

    24.   Despite completing section 7 consultation with the Fish and Wildlife Service and determining the Northern Rockies Lynx Amendment would not "jeopardize" the continued existence of lynx, the Forest Service never re-initiated section 7 consultation to determine whether the Amendment would result in "adverse modification" of critical habitat. *See* Bi-Op at 75; 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.16. "The analysis of the effects to critical habitat is a separate and different analysis from that of

11

the effects to the species, and may provide greater regulatory benefits to the recovery of a species than listing alone." 74. Fed. Reg. 8616, 8624.  The analysis "considers the effects of an action on the larger landscape scale of the critical habitat unit as a whole." 74 Fed. Reg. at 8626.

      25.   The section 7 consultation on the programmatic amendment to the "Forest Plans represents the first tier of a tiered consultation framework, with each subsequent project that may affect lynx as implemented under the amended Forest Plans being the second tier of consultation." Bi-Op at 4. "These second tier biological opinions would reference back to this biological opinion to ensure that the effects of specific projects under consultation, taken together with all other second tier projects are commensurate with the effects anticipated in this biological opinion." *Id*.

      26.   The NRLA may affect critical habitat because it provides the "big picture approach to lynx management." Bi-Op at 70.  It "contributes to the landscape level direction necessary for the survival and recovery of lynx in the northern Rockies ecosystem." Bi-Op at 70. As the Service points out, "management activities [can] reduce or degrade essential habitat elements used by lynx for denning, foraging, and recruitment, or [] increase habitat fragmentation and lynx mortality. Effects may occur and/or continue without appropriate management direction at broad scales." Bi-Op at 31.

## **FIRST CAUSE OF ACTION**

27. Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

28. Defendants have violated, and continue to violate, section 7 of the ESA and its implementing regulations with regard to the actions they authorize, fund, and/or carry out and the corresponding effects these actions have on lynx critical habitat. Defendants violated 50 C.F.R. § 402.16 by failing to re-initiate consultation to determine whether the NRLA would adversely modify lynx critical habitat.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Adjudge and declare that Defendants are in violation of law under the ESA by:

(1) violating their procedural duties under ESA Section 7, by failing to re-initiate ESA consultation to determine whether the NRLA will adversely modify lynx critical habitat.

B. Order Defendants to comply with the requirements of the ESA by promptly re-initiating consultation.

C. Issue such temporary, preliminary, and/or permanent injunctive relief as may be specifically requested hereafter by Plaintiff.

D. Award Plaintiffs their reasonable attorney fees, costs, and litigation expenses, under the ESA, 16 U.S.C. § 1540(g), the Equal Access to Justice Act, and/or any other applicable provision of law.

E. Grant such further and additional relief as the Court deems just and proper in order to remedy the violations of law alleged herein and to protect the interests of the Plaintiffs, the Public, and the threatened Canada lynx.

Dated: March 26, 2012

Respectfully submitted,

/s/  John Meyer
   John Meyer

/s/  Andrew Gorder
   Andrew Gorder

*Attorneys for Plaintiffs*